IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CT-3146-BO

| | | |
|---|---|---|
| BILLY RAY LOCKLEAR, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| SANDRA F. THOMAS, et al., | ) | |
| Defendants. | ) | |

On August 4, 2010, plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983. Now before the court are two motions to dismiss. One motion was filed by Sandra F. Thomas, Don Hunt, Mr. Maynor, Mrs. Brewington, Sergeant Locklear, Sergeant Odem, Lieutenant Jacobs, Mr. Currie and James Parnell (D.E. # 29) and the other by Tywana Locklear (D.E. # 42) which adopts, pursuant to Federal Rule of Civil Procedure Rule 10, the first motion. Plaintiff responded to the motion to dismiss, and the matters are ripe for determination.

## ISSUES AND ALLEGATIONS

Plaintiff was an inmate in the custody of the North Carolina Department of Correction ("DOC") at the time of the incident in issue.[1] (Compl., p. 2) Plaintiff's allegations are difficult to group, but it generally appears they fall into three categories: religious claims, retaliation claims, and Eighth Amendment claims.

---

[1] Plaintiff has now been released from incarceration, but has not provided the court with any forwarding address, nor did he inform the court of his release. http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0244902&searchOffenderId=0244902&listurl=pagelistoffendersearchresults&listpage=1 (last visited 2/27/2012).

a.  Religious Claims

Plaintiff is a Native American. (Id. at 3) Plaintiff states that "Black officers" were making jokes about the Native American prayer circle service. (Id.) The staff and correctional officers ate some of the food the Native American families brought in for the religious feast. (Id.) Defendant Maynor told Mrs. Locklear to take the banana pudding to the kitchen so that he could take it home later. (Id. at 3 & 6)

Plaintiff asserts that a number of the Native Americans were not allowed to attend the religious feast. (Id. at 6) The Native American inmates who did attend the religious feast were discriminated against because they were searched afterward out of fear they would smuggle food back to their cells. White and Muslim inmates, Locklear contends, are not searched after their religious feasts.

Plaintiff submitted a grievance about this incident, and thereafter he was not allowed to attend the prayer circle on the pretext he had class conflict. This, he contends, was untrue because the teacher said he would allow plaintiff to attend the prayer circle. Correctional Officers Brewington and Maynor said they would have allowed plaintiff to attend the prayer circle, but they had orders to not allow him to attend. (Id. at 6-7)

b.  Retaliation Claims

In retaliation for filing a grievance, plaintiff alleges that he and another inmate were held outside in the recreation yard in the middle of winter clad only in T-shirts and pants. (Id. at 7) He also asserts that at Scotland Correctional Institution, plaintiff was fired from his job in retaliation for grieving or complaining. (Id. at 10)

2

c. Eighth Amendment Claims

In December 2007, plaintiff contends he was injured on his way out to the recreation yard after he fell into a hole next to the sidewalk. (Id.) Plaintiff twisted his knee. (Id.) Medical staff examined his knee and said there was nothing wrong with it. Several weeks after this incident, plaintiff showed his knee to Sargent Odem, who was shocked at what she saw. (Id. at 9) Sgt. Odem had Sgt. Locklear take plaintiff to the hospital, where he was examined, treated and given medicine. After his return from the hospital, medical staff lost his paperwork.

Secondly, plaintiff was injured after someone named Bailey (who is not named a defendant herein) wrecked the transit bus on which plaintiff was a passenger. (Id. at 11) Bailey was deliberately indifferent to plaintiff's safety because he knew or should have known his conduct would lead to plaintiff's injury.

## DISCUSSION

A. Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences,

3

unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). Thus, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1949, and Twombly, 550 U.S. at 557).

B. Qualified Immunity

Defendants assert that they are entitled to qualified immunity. (Mem. Supp. Mot. Dismiss 8–9). The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Pearson v. Callahan, 555 U.S. 223, 231–32 (2009).

The court must ask two questions to determine whether qualified immunity applies. See, e.g., Pearson, 555 U.S. at 232; Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010), cert. denied, 131 S. Ct. 392 (2010); Unus v. Kane, 565 F.3d 103, 123 & n.24 (4th Cir. 2009), cert. denied, 130 S. Ct. 1137 (2010); Miller v. Prince George's Cnty., Md., 475 F.3d 621, 626–27 (4th Cir. 2007). First, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right." Pearson, 555 U.S. at 232. Second, the court must determine "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. (quotation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours

of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) (alterations omitted) (quotation omitted). The Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Id. Courts have discretion to decide which prong to address first. Pearson, 555 U.S. at 236. Thus, defendants are entitled to dismissal on qualified immunity grounds if the answer to either question is "no." See, e.g., al-Kidd, 131 S. Ct. at 2080; Miller, 475 F.3d at 627; Bostic v. Rodriguez, 667 F. Supp. 2d 591, 606 (E.D.N.C. 2009).

C.   First Amendment or RLUIPA

The Religious Land Use of Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
> (1)   is in furtherance of a compelling governmental interest; and
> (2)   is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). RLUIPA defines religious exercise as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Under RLUIPA, a plaintiff bears the burden of demonstrating that defendants imposed a substantial burden on the exercise of his religion. See 42 U.S.C. 2000cc-2(b); Gladson v. Iowa Dept. of Corrections, __ F.3d __, __, 2009 WL 36813, *5 (8th Cir. Jan. 8, 2009); Lovelace v. Lee, 472 F.3d 174, 182 (4th Cir. 2006); Adkins v. Kaspar, 393 F.3d 559, 567 n.32 (5th Cir. 2004). The burden then shifts to the defendants to demonstrate that the substantial burden

5

furthers a compelling governmental interest and does so by the least restrictive means. See Lovelace, 472 F.3d at 182. Furthermore, a court must give due deference to the experience and expertise of prison officials and may not substitute its judgment in their place, unless the inmate proves by substantial evidence that officials have exaggerated their response to the security considerations. Van Wyhe v. Reisch, 581 F.3d 639, 650 (8th Cir. 2009); Hoevenaar v. Lazaroff, 422 F.3d 366, 371 (6th Cir. 2005); and Murphy v. Mo. Dept. of Corr., 372 F.3d 979, 987 (8th Cir. 2004).

Likewise, plaintiff has the right to practice religion under the protections of the First Amendment while incarcerated. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). However, the right again is not without limits. Id.; see also Thornburgh v. Abbott, 490 U.S. 410, 415 (1989); Turner v. Safley, 482 U.S. 78, 85 (1987). The North Carolina Department of Correction ("DOC") has a compelling governmental interest in maintaining security, discipline, and order. See McRae v. Johnson, 261 Fed. Appx. 554, 558 (4th Cir. 2008) (per curiam) (unpublished); Hines v. South Carolina Dep't of Corr., 148 F.3d 353, 358 (4th Cir. 1998).

In the case at hand, plaintiff argues about the confiscation of food provided to the inmates after the service and about his inability to go to the prayer circle. First, the court does not find plaintiff has met the prima facia case in establishing a claim under RLUIPA.[2] Plaintiff does not claim that any of the food, and specifically, the banana pudding, is an integral part of his religious observance, but part of the food consumed afterward. Furthermore, if the banana

---

"We may 'not judge the significance of the particular belief or practice in question.' Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006). Indeed, 'religious exercise' is defined to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.' 42 U.S.C. § 2000cc-5(7)" Smith v. Ozmmint, 578 F.3d 246, 251 (4th Cir. 2009).

6

pudding or other food was in some way part of the religious observance, plaintiff does not claim that the misappropriation of such unreasonably restricted the exercise of his religious beliefs. See O'Banion v. Anderson, 50 Fed. App'x. 775, 776 (7th Cir. 2002) (holding a plaintiff could not salvage non-actionable due process claim for unauthorized confiscation of so-called religious property by framing it as a Free Exercise claim absent a concomitant showing that the confiscation restricted the exercise of his religious beliefs). Next, Maynor and Brewington did not allow plaintiff's to attend the prayer circle because they had orders that plaintiff was not allowed to attend. Under no reading of First Amendment or RLUIPA law has plaintiff set out a facially plausible claim for relief. Lastly, any alleged search of the inmates after the service appears to comport with the governmental interest in maintaining security, discipline, and order. Qualified immunity thus shields all defendants from liability.

D.   Retaliation

Turning to the retaliation issue, such claims by prison inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir.1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir.1994). "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials 'sufficient to deter a person of ordinary firmness from exercising his constitutional rights,' and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him.' " Kelly v. York County Prison, 340 Fed. App'x 59, *1 (3rd Cir. 2009) (citing James v. Quinlan, 866 F.2d 627, 629 (3d Cir.1989)).

7

A state grievance procedure does not confer a substantive right upon inmates. Thus, the alleged failure of detention officials to properly handle plaintiff's grievance forms does not raise an actionable claim under § 1983. See Daye v. Rubenstein, 417 Fed. App'x 317, *2 (4th Cir. 2011) (unpublished); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Therefore, any claims of retaliation arising out of his grievances do not state a claim. Likewise, the loss of a job as a retaliatory measure is not actionable given that a prisoner has no right to work. See O'Bar v. Pinion, 953 F.2d 74, 82-84(4th Cir. 1991). Lastly, and in an abundance of caution, the court hold that these allegations do not raise any issues of access to courts claims. Qualified immunity thus shields all defendants from liability.

D.   Eighth Amendment

A prisoner has a clearly established protected right to be free from an excessive risk to health or safety of which a prison official knows or consciously or intentionally disregards. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A plaintiff must show both "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (internal quotation marks omitted). The first prong requires the court to determine whether the deprivation was objectively sufficiently serious, while the second prong requires the court to determine whether the officials acted with a subjectively sufficiently culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298(1991)). "[D]eliberate indifference entails something more than mere allegation, ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. "It requires that a prison official know of and disregard [an] objectively serious condition,

medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir.1995) (citing Farmer, 511 U.S. at 837). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official DIRECTED both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 at 837.

Plaintiff's allegations are two-fold. First, plaintiff contends that defendant Odem examined plaintiff's leg three weeks after plaintiff fell into the hole on his way out to the recreation yard. At that point in time, defendant Odem had Sgt. Locklear take plaintiff to the hospital for treatment. There are no factual allegations which confer any knowledge of the fall or injury prior to the time defendant Odem examined his leg. Thus, no deliberate indifference has been alleged on the part of defendants named as participants to this claim. Secondly, no knowledge or deliberate indifference on the part of any defendants has been alleged as to the bus accident incident. In fact, the driver was not named in this suit. Qualified immunity thus shields all defendants from liability.

## CONCLUSION

For the above stated reasons, defendants' motions to dismiss (D.E. # 29 and 41) are GRANTED and the case is DISMISSED. Having so determined, all pending motions are DENIED as MOOT. (D.E. # 44). The Clerk is DIRECTED to CLOSE the case.

SO ORDERED, this the 29 day of February 2012.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE